UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case File No. 14-MJ-1024 (JSM)

| | |
|---|---|
| UNITED STATES OF AMERICA,           ) | |
| ) | **MEMORANDUM OF THE** |
| Plaintiff,           ) | **UNITED STATES IN** |
| ) | **SUPPORT OF MOTION** |
| v.           ) | **FOR REVIEW** |
| ) | **AND REVOCATION OF** |
| ABDULLAHI YUSUF,           ) | **ORDER RELEASING** |
| ) | **DEFENDANT** |
| Defendant.           ) | |

The United States of America by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Assistant United States Attorneys John Docherty and Andrew Winter, respectfully submits this memorandum in support of its motion for review and revocation of the Magistrate Judge's Order releasing the defendant.

Defendant appeared for a preliminary hearing and a hearing on the motion of the government for detention on Wednesday, November 26, 2014.  The Magistrate Judge found probable cause to believe that the defendant had committed the crime of conspiring to provide material support to a designated terrorist organization (the Islamic State in Iraq and the Levant ("ISIL")), as charged in the complaint.  The Magistrate Judge then turned to the government's motion for detention, and denied it.  The government moved for a stay of the release order pending review.  The Magistrate Judge denied that motion.  The United States, immediately after the hearing, filed a motion for review of the Magistrate Judge's decision.   That motion was accompanied by a very brief supporting

1

memorandum. The brief supporting memorandum stated that a fuller memorandum would be filed quickly. This document is that fuller memorandum.

## STANDARD OF REVIEW

This motion for review and revocation is brought pursuant to Title 18, United States Code, Section 3145(a)(1), which states that:

> If a person is ordered released by a magistrate judge, . . .
> (1) the attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order. . . .

A district court reviews *de novo* a magistrate judge's release order. *United States v. Maull*, 773 F. 2d 1479, 1481 (8th Cir. 1985)(*en banc*).

In this case a rebuttable presumption in favor of detention arises pursuant to 18 U.S.C. § 3142(e)(3)(C), because the Magistrate Judge found probable cause to believe the defendant had violated 18 U.S.C. § 2339B by conspiring to provide material support to ISIL. 18 U.S.C. § 3142(e)(3)(C) provides that:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial person finds that there is probable cause to believe that the person committed - . . .
> (C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of ten years or more is prescribed; . . . .

Section 2332b(g)(5)(B) lists various federal terrorism offenses, among them Title 18, United States Code, Section 2339B. The maximum term of imprisonment for a violation

of 18 U.S.C. § 2339B is 15 years' imprisonment. A rebuttable presumption therefore arises that detention is appropriate in this case.

## FACTS RELEVANT TO DETENTION

The allegations of the criminal complaint (which is attached to this memorandum as Attachment A),[1] and the testimony of Federal Bureau of Investigation Special Agent John Thomas establish that the defendant, on April 28, 2014, applied for a United States passport at the Department of State's Passport Office in downtown Minneapolis. The defendant paid an extra fee to have his application considered on an expedited basis, and on the application said he needed the passport for an upcoming trip to Turkey.

At the time he applied for a passport the defendant was living with his parents. On May 5, 2014, the defendant's father dropped him off at the defendant's school, the Heritage Academy in south Minneapolis. The defendant, according to the complaint and the testimony of Special Agent Thomas, did not go into the Heritage Academy, but rather, looked over his shoulder until his father drove off. The defendant then walked to a nearby mosque, and after some time inside, caught a Metro Transit bus. He made his way by a circuitous route to the Passport Office, where he collected his new passport. Later that day he used his new passport as identification to open an account at Wells Fargo Bank. On May 23, the defendant deposited $1,500 in cash into this bank account, in four separate transactions at an ATM on Lake Street. The source of this cash is

---

[1] The facts set out in this memorandum are covered in far greater detail in the sworn complaint affidavit of FBI Special Agent John Thomas. The factual statement in this memorandum summarizes that of the complaint affidavit, and adds to the complaint's factual statement certain details provided in Special Agent Thomas's preliminary hearing testimony.

3

unknown. The defendant had no job, had not had a job for some time, and the defendant's parents, in interviews with the FBI, said both that they had not given him this money and that the defendant did not have the funds to buy an international airline ticket.

On May 24, 2014 the defendant purchased an airline ticket to Istanbul on Aeroflot. On May 28, the defendant was dropped off at Heritage Academy by his father, just as he had been on May 5 - before he slipped away and collected his passport. On May 28, the defendant entered the school, but he left after an hour, and again made his way to the same nearby mosque. He came out of the mosque carrying luggage, was picked up outside the mosque, and was driven to the area of the intersection of East 45th Street and Hiawatha Avenue in Minneapolis. From there, he caught a light rail train to the Minneapolis/St. Paul Airport. The defendant then attempted to fly out of Minneapolis/St. Paul International Airport on an itinerary that would have taken him from Minnesota, to New York's John F. Kennedy International Airport, to Moscow, Russia, and then on to Istanbul. However, tipped off by an alert passport clerk who had found the defendant's behavior when he applied for his passport on April 28 to be unusual, the FBI had been investigating the defendant. FBI Agents, among them Special Agent Thomas, met the defendant at the airport and told him he would not be allowed to board his flight. The agents asked to interview the defendant, and he agreed to speak with them.

In his conversation with the FBI agents, the defendant made several demonstrably false statements. Those false statements are spelled out in Special Agent Thomas's sworn complaint affidavit and were among the subjects of Special Agent Thomas's testimony at the preliminary hearing. They include:

- A claim by the defendant that his parents knew where he was. In fact, according to interviews of the defendant's father and mother, he had applied for and obtained his passport, bought his ticket to Turkey, packed his bag, and made his way to the airport, all without his parents' knowledge.

- The defendant stated that he had paid for his ticket by saving up. In fact, as noted above, the defendant could not afford to have bought his ticket with his own money.

- The defendant claimed he had not told the passport clerk that he was going to Turkey to visit a friend, but instead claimed that he had only told the clerk he had Facebook friends from Turkey. A review of the defendant's publicly-accessible Facebook page shows he has no Facebook friends with any attachment at all to Turkey.

Following the interview the defendant was allowed to leave.

After his arrest on November 25, 2014, the defendant made an initial appearance before the Magistrate Judge. U.S. Probation and Pretrial Services recommended detention, and the government made a motion for detention. The following day, November 26, 2014, the defendant appeared before the Magistrate Judge for a preliminary and detention hearing. At this time, with no apparent change in facts other than that the defendant's parents had agreed to speak with the Pretrial Officer (they had declined to do so the day before), the recommendation of Pretrial Services changed to one of conditional release. The Magistrate Judge released the defendant into the custody

of the same parents that the defendant had twice eluded, once to go and get his passport, once to try and board a flight to Istanbul. The Magistrate Judge also required the defendant to submit to location monitoring, and to surrender his passport. In addition, the Magistrate Judge imposed on the defendant the standard conditions of pretrial release, such as remaining law-abiding. The defendant's parents were questioned by the Magistrate Judge as to their willingness to be responsible for the defendant. No Somali-English interpreter was available, so Mr. Omar Jamal was pressed into service to interpret. Through him, the parents indicated they would accept responsibility for the defendant.

## ARGUMENT

It is unusual for the Court to have before it a situation in which the very condition of release which the Magistrate Judge relied upon – parental supervision – has been tried already, and has failed not once, but twice, with potentially serious consequences for the safety of the community (and for the defendant's own welfare). The Magistrate Judge had before her a full description of the defendant's behavior. This record included testimony about the defendant's watching over his shoulder on May 5 until his father drove off before walking to a nearby mosque where he caught a bus to the Passport Office. It also included a recounting of the events of May 28, in which the defendant emerged from school only an hour after being dropped off, collected his bags from the nearby mosque, was driven away from the mosque, and then was dropped off, not at the airport, not even at a light rail station, but to an intersection about five blocks from the light rail station. The defendant then walked to the station, and from there he caught a

train to the airport. The record included a description of the defendant changing from his school clothes into his traveling clothes at the side of the road on the way from the mosque to the intersection near the light rail station on May 28. What the Magistrate Judge heard, in short, was a recounting of a well thought-out, multi-step, counter-surveillance plan. This plan certainly fooled the defendant's parents; they later told the FBI they had no idea their son had obtained a passport, no idea their son had bought a ticket to Turkey, and no idea their son was at the airport trying to get to Turkey. The most important release condition imposed by the Magistrate Judge has already been tested and has failed.

Nor can any comfort be drawn from the additional conditions imposed by the Magistrate Judge, namely electronic location monitoring and the defendant's surrender of his passport.

Electronic location monitoring is not a means of tracking a defendant's movements in real time. Instead, the location monitoring can be used after the fact to establish that a person under supervision has violated their terms of release by going to a place they were told not to go to, or by leaving a place they were told to stay at. Nor is electronic location monitoring infallible; the Court and the undersigned both have experience of individuals cutting off the ankle bracelets used for electronic location monitoring. Such cases may be rare, but if there is a defendant who is likely to cut off a bracelet it is a defendant who has engaged in the sophisticated counter-surveillance measures described above in this memorandum.

Second, surrender of a passport does not mean that a person cannot leave the United States. Earlier today (December 2, 2014), the United States Attorney's Office charged a Minnesota woman with using the passport of another person to leave Minnesota and travel through the Netherlands and Norway on her way to Syria. *United States v. Yusra Ismail*, Court File No. 14-MJ-1047 (JSM).

The defendant may argue, as he did before the Magistrate Judge, that since being denied boarding at the airport he has been law abiding. The defendant's behavior after May 28 should not be given much weight by this Court. First, the defendant learned on May 28 that he would not be allowed to board his flight. That he has not attempted to repeat behavior that was unsuccessful once is scarcely surprising. Second, his encounter with the FBI on May 28 also taught the defendant that he may be being watched. That he has reacted to this by becoming punctilious about observing society's rules is, again, scarcely surprising.

In fact, even if the Court should deem the defendant's post-May 28 behavior persuasive to the point of balancing out the defendant's getting to the Passport Office and the airport without his parents' knowledge, the rebuttable presumption would still tip the balance of the evidence towards detention. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) ("In a presumption case such as this, a defendant bears a limited burden of production – not a burden of persuasion – to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight . . . Once a defendant has met his burden of production relating to these two factors, the presumption

favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.").

A "rebuttable presumption" is defined as "[a]n inference drawn from certain facts that establish a prima facie case, which may be overcome by the introduction of contrary evidence." Black's Law Dictionary, 13406 (9th Ed. 2009). As noted by one court:

> In producing evidence to rebut the presumption, a defendant looks to the four factors set forth in § 3142(g), which the court must consider in determining whether pretrial detention is warranted. *See, United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (to determine whether the presumption of dangerousness has been rebutted, the court should consider the factors set forth in § 3142(g)).

*United States v. Harris*, 2010 WL 456920 *6 (W.D. Pa. Feb. 3, 2010).

The 3142(g) factors in this case strongly support detention. Section 3142(g)(1) requires a court to consider (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community.

The crime charged is a federal terrorism offense. Among "the circumstances of the offense charged" is the fact that the defendant is a part of a network that is only partially understood by law enforcement at this time. The defendant did not provide the funds for his own travel, the $1,500 in cash that he deposited into his account, nor did his parents. That network, which the defendant has accessed once, may still be available to

assist the defendant to flee.  The weight of the evidence is strong.  The complaint lays out a case in which the defendant obtained cash, bought an airline ticket on a world-spanning route to Istanbul, was taken to the airport by a confederate, and lied to the FBI.  As to the defendant's history and characteristics, he does not have a criminal record, but a judicial finding has been made that there is probable cause to believe he has committed a federal crime of terrorism, and in the course of a single interview he has made at least three false statements to the FBI.  Finally, the danger to the community is extreme because this is a case involving material support to an international terrorist organization.

For all these reasons, the United States respectfully asks this Court to review the Magistrate Judge's release order *de novo*, to revoke that order, and to order the defendant detained until trial.

Dated:  12/2/14                                                  Respectfully Submitted,

                                                                 ANDREW M. LUGER
                                                                 United States Attorney

                                                                 s/ John Docherty

                                                                 BY:   JOHN DOCHERTY
                                                                 Assistant United States Attorney
                                                                 Attorney Reg. No. 017516X