UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> ) <br> ABDULLAHI YUSUF, ) <br> ) <br> Defendant. ) | Criminal No. (MJD) <br><br> MEMORANDUM IN SUPPORT OF MOTION TO RELEASE FROM CUSTODY AND REVIEW DETENTION ORDER |

Abdullahi Yusuf, by and through his undersigned attorneys, hereby submits this memorandum and attachments in support of his motion to review the Court's December 4, 2014 detention Order.

**Procedural History**

On November 24, 2014, Abdullahi Yusuf was charged by complaint with conspiracy to provide material support to a designated foreign terrorist organization under to 18 U.S.C. 2339B. The offense carries a maximum penalty of 15 years. The compliant alleges that soon after Mr. Yusuf turned eighteen-years old, he attempted fly to Syria to join a designated terrorist organization. He was confronted by FBI agents on May 28, 2014 at the Minneapolis airport. After the offense conduct, Mr. Yusuf remained under investigation and received a "target" letter from the United States Attorney Office. On November 24, 2014, he was charged by compliant and arrested in the metro area.

On November 26, 2014, after the government moved for detention, Magistrate Judge Janie S. Mayeron heard testimony from S/A John Thomas and Mr. Yusuf in

relation to probable cause and bail factors. Probable cause was found and Magistrate Mayeron determined that there were conditions to reasonably assure the appearance of the defendant and the safety of the community. (Docket #16). An appearance bond was signed by Mr. Yusuf on November 26, 2014 (Docket #18). The government appealed the court's order. (Docket #11).  Both sides filed memorandums. (Docket #24 and #27). Between November 26 to December 3, 2014, Mr. Yusuf complied with his pretrial release conditions. On December 3, 2014, this Court heard the government's appeal. The Court heard testimony from Mr. Yusuf's father, Sadiik Yusuf. After argument, the Court revoked the previous release order and ordered Mr. Yusuf into custody. However, the Court stated the following:

> If there is a plan that can be put in place that can have the Somali community elders and other leaders assist the Court in the supervision of this young man, I will take a look at releasing him. But at this point the Somali community has to step forward to help the family and the Court monitor his whereabouts and his actions.

Since the hearing, counsel has met with Somali community members and have devised a plan to assure the safety of the community and the appearance of Mr. Yusuf in future court appearances.

## The Court's Concerns

**A.     Somali Community Input**

Twice in December, counsel for Mr. Yusuf met with community elders and

leaders. Each expressed their concern about young members of their community traveling to Syria and Somalia. Some discussed their on-going efforts with the U.S. Attorney to combat the problem. Many of the elders know Mr. Yusuf's family. Each emphasized they would do whatever they could to help the Court and Mr. Yusuf. Each agreed to connect with Mr. Yusuf and his family. Each agreed to report any suspicious activity. To put a more concrete plan together, counsel reached out to Heartland Democracy's Executive Director, Mary McKinley.

Heartland Democracy is a nonprofit organization with a board of directors and an advisory board. One of the organization's goals is to reach out to youth and get them more involved in the community or civic affairs. The purpose is to get the youth to participate socially, economically, and civically with their communities. More information about the organization can be found in the attached exhibit and at [www.HeartlandDemocracy.org.](www.HeartlandDemocracy.org.)

Ms. McKinley met with leaders and the elders of the Somali community. Through an open dialogue, the parties came up with a concrete plan that will not only help Mr. Yusuf, but other young people in the Somali Community. Ms. McKinley will be present in court on Monday, January 12, 2015 to answer the Court's questions.

### B.     Release to Mr. Yusuf's parents

At the hearing, the Court expressed concern that Mr. Yusuf lied to his parents and obtained a passport and airline ticket while under his parent's custody. Since the December 3, 2014 court hearing, counsel has met with Mr. Yusuf's family numerous

times. Mr. Yusuf has met with his parents to discuss his case. The parents are well aware of the very serious nature of this case. Because of the severe consequences that may result in this case, they are very dedicated to diligently watch over Mr. Yusuf. His parents want him to be in the home and are willing to enforce any court conditions. Since the target letter arrived at their home in the summer of 2014, they have made sure Mr. Yusuf is working or going to school. They have monitored him much more closely than the Spring of 2014. For example, the parents randomly call Mr. Yusuf to make sure he is at work or at school. Even when he was at home, they checked to make sure he was where he was suppose to be. Finally, they made sure he appeared when he was subpoenaed to the Grand Jury and ordered to appear in court.

**C.     Passport and Travel**

In addition, the Court expressed concern that Mr. Yusuf may attempt to obtain a new passport and travel. It is important to note that between the end of May through November 26, 2014, Mr. Yusuf had a passport. At anytime, he could have used that passport to travel. He did not. Even though he knew he could be taken into custody on December 3, 2014, he did not attempt to flee, rather, he showed up to Court with his parents. Currently, his passport is with the Probation Office.

**D.     Electronic Location Monitoring**

Finally, the Court expressed concern that the electronic location monitoring cannot reasonably assure the defendant's appearance since such technology is not infallible and the G.P.S. bracelet can be cut off. The Court is correct that electronic location monitoring

is not infallible. However, it is a measure that can assist in Mr. Yusuf's supervision. G.P.S. is used in many cases because it does help probation officers supervise clients. For example, two defendants in *United States v. Isse*, et al (09-50 MJD/FLN), were charged with traveling to Somalia, attending a terrorist camp and returning to the United States. Defendants Isse and Ahmed were released pending trial rather than detained. Each defendant complied with their pretrial conditions and did not flee. The G.P.S. units placed on each defendant assisted in their pretrial supervision.

The G.P.S. unit that Mr. Yusuf was wearing for eight days randomly said "Call Officer now." The voice continued to speak until Mr. Yusuf called the supervising officer. Mr. Yusuf wasin Philosophy class when his G.P.S. unit ordered him to call the officer. He ran home two miles to call his probation officer because the FBI took his phone at his initial appearance. Although, Mr. Yusuf was on pretrial release for less than 10 days, the G.P.S. monitoring did assist the supervising agent and Mr. Yusuf did not attempt to cut the bracelet.

E.   **Additional Positive Factors**

As highlighted in the first hearing and again before this Court in the second hearing, there are many factors that weigh in Mr. Yusuf's favor for release.

- After receiving a target letter from the United States Attorney's Office, Mr. Yusuf did not attempt to flee.

- Mr. Yusuf was given a subpoena to come to a United States Grand Jury on June 19, 2014. He showed up.

- Mr. Yusuf began working at the Best Buy on September 20, 2014.

- Mr. Yusuf enrolled in classes at Inver Hills Community College in August 2014 and was attending school when he was arrested on November 24, 2014.

- During his pretrial release period from November 26 through December 3, 2014, Mr. Yusuf did not attempt to flee or obtain a new passport. Rather, he abided by the conditions Magistrate Judge Mayeron set forth in her order and showed up for an appearance before this Court.

**F.     New Factors**

Counsel has reached out to Mr. Yusuf's Community College. He can begin classes later this month. Mr. Yusuf may continue to reside with his parents at their home located in Inver Grove Heights. The parents home and the school (Inver Hills Community College) are about two miles away from each other. The family has no issue with computer monitoring software being placed on the home computer. The attached proposal by Ms. McKinley allows the Somali community to be involved and assure that no more young people are targeted to travel.

## CONCLUSION

Respectfully, Mr. Yusuf requests that the Court impose the release terms and conditions that were previously imposed on him on November 26, 2014.

Dated: January 9, 2015                    Respectfully submitted,

                                                     */s Manny K. Atwal*

                                                     JEAN M. BRANDL
                                                     Attorney ID No.
                                                     MANNY K. ATWAL
                                                     Attorney ID No. 282029
                                                     Attorneys for Defendant