UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------
                                )
United States of America,       )   File No. 15-CR-46
                                )           (MJD)
          Plaintiff,            )
                                )
vs.                             )   Minneapolis, Minnesota
                                )   February 26, 2015
Abdullahi Mohamud Yusuf,        )   10:25 a.m.
                                )
          Defendant.            )
                                )
------------------------------------------------------------

BEFORE THE HONORABLE MICHAEL J. DAVIS
UNITED STATES DISTRICT COURT JUDGE

**(CHANGE OF PLEA HEARING)**


<u>APPEARANCES</u>
  For the Plaintiff:            U.S. Attorney's Office
                                ANDREW R. WINTER, AUSA
                                JOHN DOCHERTY, AUSA
                                300 South Fourth Street, #600
                                Minneapolis, Minnesota 55415

  For the Defendant:            Federal Public Defender's Office
                                MANVIR KAUR ATWAL, ESQ.
                                300 South Fourth Street, #107
                                Minneapolis, Minnesota 55415

                                Brandl Law, LLC
                                JEAN M. BRANDL, ESQ.
                                310 Fourth Avenue South, #5010
                                Minneapolis, Minnesota 55415

  Court Reporter:               LORI A. SIMPSON, RMR-CRR
                                300 South Fourth Street, #1005
                                Minneapolis, Minnesota 55415



     Proceedings recorded by mechanical stenography;
transcript produced by computer.

1                           **P R O C E E D I N G S**

2                              **IN OPEN COURT**

3              THE COURT:  Let's call this matter.

4              THE CLERK:  The United States of America vs.

5     Abdullahi Mohamud Yusuf, Criminal Case No. 15-CR-46.

6     Counsel, please state your appearances for the record.

7              MR. WINTER:  Good morning, Your Honor.  Andrew

8     Winter and John Docherty appearing on behalf of the

9     government.

10             THE COURT:  Good morning.

11             MS. BRANDL:  Good morning, Your Honor.  Jean

12    Brandl and Manny Atwal appearing for Yusuf -- Abdullahi

13    Yusuf.

14             THE COURT:  Good morning.  Please step forward.

15    My understanding this is here for a change of plea.  Is that

16    correct?

17             MS. BRANDL:  That's correct, Your Honor.

18             THE COURT:  All right.  Mr. Winter, will you go

19    over the Plea Agreement and Sentencing Stipulations and then

20    we have to go over his waiver of being indicted.

21             MR. WINTER:  Yes, Your Honor.  Thank you.

22                              **EXAMINATION**

23    BY MR. WINTER:

24    Q.  Mr. Yusuf, good morning.

25    A.  Good morning.

1    Q.  I've got a document in front of you and it's entitled

2    Plea Agreement and Sentencing Stipulations, correct?

3    A.  Correct.

4    Q.  You've had time to read this document?

5    A.  Yes, sir.

6    Q.  Gone over it with your attorneys?

7    A.  Yes, sir.

8    Q.  What we're going to do is we're going to cover -- walk

9    through the plea agreement so that there's a mutual

10   understanding as to what the contents of the plea agreement

11   are.  Okay?

12   A.  Okay.

13   Q.  The first portion of the plea agreement refers to the

14   fact that this agreement doesn't bind any other agencies

15   other than the United States Attorney's Office for the

16   District of Minnesota.  Do you understand that?

17   A.  Yes, sir.

18   Q.  Paragraph 1 refers to the actual charge that you are

19   planning to plead guilty to this morning, that being a

20   conspiracy to provide material support and resources to

21   ISIL.  Do you understand that?

22   A.  Yes, sir.

23   Q.  Paragraph 2 is called Factual Basis and Stipulated

24   Facts.  This is a recitation of facts that if true, we're

25   asserting to the Court, would make you guilty of the offense

1    contained in the information, correct?

2    A.  Yes, sir.

3    Q.  And we'll come back, at the Court's instruction, to the

4    specific facts during this hearing.  All right?

5    A.  Yes, sir.

6    Q.  Paragraph 3 refers to waiver of pretrial motions.  Do

7    you see that?

8    A.  Yes, sir.

9    Q.  And what this says is that as part of this plea

10   agreement, that you are willingly and voluntarily waiving

11   your right to file pretrial motions and challenge evidence

12   collected against you in this case.  Do you understand that?

13   A.  Yes, sir.

14   Q.  Paragraph 4 refers to statutory penalties that are

15   attached to the count that you intend to plead guilty to and

16   that includes a 15-year maximum term of imprisonment,

17   supervised release term of life, fine of up to $250,000, and

18   a special assessment of $100.  Do you understand that?

19   A.  Yes, sir.

20   Q.  Paragraph 5 refers to revocation of supervised release.

21   Assuming you plead guilty this morning and you are

22   sentenced, you will eventually be placed on supervised

23   release.  And if you were to violate the conditions that

24   Judge Davis places upon you, he can send you back to prison.

25   Do you understand that?

1    A.  Yes, sir.

2    Q.  Paragraph 6 refers to the guideline sentencing

3    stipulations and these are agreements that you and your

4    attorneys and the government have come to with respect to

5    how the guidelines are going to be applied to your case.

6    Does that sound right?

7    A.  Yes, sir.

8    Q.  And you understand that the Court, His Honor, does not

9    have to abide by these stipulations, it's simply us

10   informing him what our belief is as to those things; do you

11   understand that?

12   A.  Yes, sir.

13   Q.  And he ultimately can accept or reject those

14   stipulations.

15          And just to get into some of the specifics, one of

16   the adjustments, it's paragraph (c), Chapter 3 Adjustments,

17   and we're on page 4, refers to a 12-level adjustment under

18   Section 3A1.4, commonly referred to as a terrorism

19   enhancement, and you're agreeing that that applies.  You

20   understand that that's part of the agreement?

21   A.  Yes, sir.

22   Q.  And you're reserving the right to argue that you played

23   a minor role in this conspiracy.  That's laid out in that

24   same paragraph, right?

25   A.  Yes, sir.

1    Q.  And we're agreeing that there aren't any other

2    adjustments contained in that guidelines book that apply to

3    your case, right?

4    A.  Yes, sir.

5    Q.  Paragraph (d) is very important.  This lays out

6    acceptance of responsibility, which is a three-level

7    decrease that would apply, but there are certain conditions

8    that need to be met in order for the Court to reduce your

9    offense level by three and that includes providing truthful

10   disclosures to the United States, accurate and truthful

11   financial information.  And that's all part of the

12   presentence report that Probation is going to prepare,

13   right?

14   A.  Yes, sir.

15   Q.  You have to comply with the conditions of your release

16   that you're under right now.  You need to make sure that you

17   don't do anything inconsistent with acceptance of

18   responsibility.  It's a fancy way of saying you need to keep

19   your nose clean between now and sentencing, right?

20   A.  Yes, sir.

21   Q.  All right.  And if you meet all these conditions, then

22   we're going to assert that you're eligible for that

23   three-level reduction for acceptance of responsibility.  All

24   right?

25   A.  All right.

1   Q.  When we do all the math, we come up with a total offense

2   level or adjusted offense level of 38 and it will be reduced

3   by three for acceptance and there's a possibility you could

4   get another reduction for a minor role, but because of the

5   terrorism enhancement, you're over at a Category VI on

6   criminal history, which is under paragraph (f), right?

7   A.  Um-hmm.

8   Q.  And then ultimately paragraph (g) lays out the fact that

9   you're -- with the statutory maximum of 15 years, your

10  guidelines range is 180 months, right?

11  A.  Yes, sir.

12  Q.  Okay.  Fine range, you've read that and you understand?

13  A.  Yes, sir.

14  Q.  Supervised release on paragraph (i), we've already

15  talked about that, two years to life.  Do you understand

16  that?

17  A.  Yes, sir.

18  Q.  You're also in this agreement reserving the right to

19  make additional arguments for a downward variance from

20  whatever the Probation Department comes up with in that

21  presentence report we've talked about.  So you've got the

22  ability to make other arguments about your sentence, you're

23  reserving that right, do you understand that?

24  A.  Yes, sir.

25  Q.  Paragraph 7 where it says, "Discretion of the Court,"

1    I've already touched on that a little bit, which is that

2    these stipulations aren't binding on the Court.  Judge Davis

3    will make his own decision and you'll have to abide by that

4    decision.  You won't be able to withdraw from the plea

5    agreement if he finds something different in here than we

6    found.  Do you understand that?

7    A.  Yes, sir.

8    Q.  Paragraph 8, we've talked about special assessment.

9            And paragraph 9 talks about forfeiture, and we

10   haven't had any discussions about that.  We don't believe

11   there's any forfeiture involved at this point, but that

12   could arise later on.

13           Paragraph 10 refers to immigration consequences.

14   You understand what that paragraph explains?

15   A.  Yes, sir.

16           THE COURT:  Let's go over that.

17           MR. WINTER:  Okay.

18   BY MR. WINTER:

19   Q.  You recognize that by pleading guilty that there may be

20   some consequences with respect to your immigration status,

21   including removal or deportation if you're not a citizen of

22   the United States?  Are you a citizen of the United States?

23   A.  Yes, sir.

24   Q.  Okay.  Regardless, you understand that no one, including

25   the U.S. Attorney or this Court, can predict exactly what

1   consequences there may be on an immigration status as a

2   result of pleading guilty; do you understand that?

3   A.  Yes, sir.

4   Q.  So regardless of any immigration consequences that may

5   follow, you're aware that there may be immigration

6   consequences that follow and you understand that if that

7   happens, and we're not saying it will, but if that happens,

8   it's not a basis for you to come back and ask to be absolved

9   of this agreement?

10  A.  I understand.

11  Q.  Okay.  And then the last paragraph is that this

12  agreement sets forth the extent of the plea agreement and

13  sentencing stipulations in this case, right?

14  A.  Yes, sir.

15          MR. WINTER:  Should I move on to the waiver of the

16  indictment, Your Honor?

17          THE COURT:  Please.  Let's swear the defendant in.

18          THE CLERK:  Please raise your right hand.

19      (Defendant sworn.)

20  BY MR. WINTER:

21  Q.  Mr. Yusuf, I've got a document in front of you now that

22  is the waiver of the indictment.  We're proceeding this

23  morning on a document called an information, correct?

24  A.  Yes, sir.

25  Q.  The Fifth Amendment of the Constitution says that you

1    have a right to have your case brought against you by way of

2    grand jury indictment.  And a grand jury is a group of

3    citizens who sit and they listen to the evidence that the

4    government presents and they're an independent body.

5           If 12 grand jurors concur that there's probable

6    cause for a charge such as conspiracy to provide material

7    support, then they would indict.  If they did not find that

8    there is sufficient evidence, then they would issue a no

9    bill.

10          That's the traditional method of being charged

11   with a felony in federal court.  By signing this document

12   today, you're waiving the right to have your case processed

13   that way and you're agreeing to a more -- slightly less

14   formal version, which is an information.  The information

15   was drafted by my office, not by the grand jury, and you're

16   proceeding that route.

17          You understand that by doing that, you're giving

18   up all those rights to have your case go through the grand

19   jury and have those citizens listen to the evidence and make

20   their own decision?

21   A.  I understand.

22   Q.  And if that's the case, I would like you to sign where

23   it says your name and then I'm going to sign underneath as

24   witness, as well as your attorney, Ms. Brandl.

25          MS. BRANDL:  For the record, Ms. Atwal has already

1    signed.

2              MR. WINTER:  Tender this?

3              THE COURT:  You may keep it there for now.

4              Counsel, is that your understanding of the Plea

5    Agreement and Sentencing Stipulations?

6              MS. BRANDL:  Yes, Your Honor.

7                           **EXAMINATION**

8    BY THE COURT:

9    Q.  Sir, would you state your true and correct name for the

10   record, please.

11   A.  Abdullahi Mohamud Yusuf.

12   Q.  And how old are you?

13   A.  18 years old, Your Honor.

14   Q.  And how far have you gone in school?

15   A.  I've completed high school and was enrolled in college,

16   Your Honor.

17   Q.  And where were you enrolled in college?

18   A.  Inver Hills Community College, Your Honor.

19   Q.  And can you read and write the English language?

20   A.  Yes, I can, sir.

21   Q.  And did you have an opportunity to go over the Plea

22   Agreement and Sentencing Stipulations with your attorneys?

23   A.  Yes, Your Honor.

24   Q.  And did they go over that agreement with you line by

25   line?

1    A.  Yes, Your Honor.

2    Q.  And did they read it to you or did you read it along

3    with them?

4    A.  Both, Your Honor.

5    Q.  And did you understand it?

6    A.  Yes, Your Honor.

7    Q.  And when you did not understand a word or a phrase or a

8    sentence or a concept, did you ask your attorneys about

9    that?

10   A.  Yes, Your Honor.

11   Q.  And did they explain it to your satisfaction so you

12   would understand what was going on?

13   A.  Yes, Your Honor.

14   Q.  And you understand that you're here to enter a plea of

15   guilty to the information?

16   A.  Yes, Your Honor.

17   Q.  All right.  Now, I would ask you to turn to the last

18   page of the Plea Agreement and Sentencing Stipulations.  Is

19   that your signature, sir?

20   A.  Yes, Your Honor.

21   Q.  And with that signature, does that mean that you've read

22   this document?

23   A.  Yes, Your Honor.

24   Q.  That you understand it?

25   A.  Yes, Your Honor.

1      Q.  And that you agree with everything that's in it?

2      A.  Yes, Your Honor.

3      Q.  Now, you understand that you could continue on and have

4      the government take this matter to the grand jury and see

5      whether or not you would be indicted by a grand jury; do you

6      understand that?

7      A.  Yes, Your Honor.

8      Q.  And if you were indicted by a grand jury, you could

9      enter a plea of not guilty and you would be entitled to a

10     jury trial of 12 persons.  Do you understand that?

11     A.  Yes, Your Honor.

12     Q.  And at your jury trial you would be presumed innocent of

13     any and all charges against you.  Do you understand that?

14     A.  Yes, Your Honor.

15     Q.  The burden of proof would be on the government to prove

16     you guilty beyond a reasonable doubt.  Do you understand

17     that?

18     A.  Yes, Your Honor.

19     Q.  Proof beyond a reasonable doubt is a very, very high

20     standard.  Do you understand that?

21     A.  Yes, Your Honor.

22     Q.  And the way the government would try to prove you guilty

23     beyond a reasonable doubt is by calling witnesses into open

24     court.  Those witnesses would be placed under oath and they

25     would give testimony against you.  Do you understand that?

1    A.  Yes, Your Honor.

2    Q.  You would have a right to confront and cross-examine

3    those witnesses through your attorney, Ms. Brandl.  Do you

4    understand that?

5    A.  Yes, Your Honor.

6    Q.  Do you also understand that you would have an absolute

7    right to testify at your trial?

8    A.  Yes, Your Honor.

9    Q.  And if you decided to testify at your trial and tell

10   your side of the story to the jury, you would have an

11   absolute right to do that.  Do you understand that?

12   A.  Yes, Your Honor.

13   Q.  And if you testified, you would be placed under oath

14   like any other witness.  Do you understand that?

15   A.  Yes, Your Honor.

16   Q.  And you would be subject to cross examination by the

17   government.  Do you understand that?

18   A.  Yes, Your Honor.

19   Q.  Now, you have an absolute right to use the court's power

20   to bring in any witnesses or documents necessary for your

21   defense.  Do you understand that?

22   A.  I understand, Your Honor.

23   Q.  And you also have an absolute right to remain silent.

24   Do you understand that?

25   A.  Yes, Your Honor.

1    Q.  And that means that at this hearing no one could force

2    you to give evidence against yourself.  Do you understand

3    that?

4    A.  Yes, Your Honor.

5    Q.  And if you went to trial, do you understand that you

6    would have an absolute right to remain silent, sit at the

7    counsel table and not say a word, and no one could force you

8    to testify; do you understand that?

9    A.  Yes, Your Honor.

10   Q.  And if you decided not to testify at your trial, do you

11   understand that neither the government nor the court could

12   make any negative comments to the jury about you not

13   testifying and telling your side of the story to the jury;

14   do you understand that?

15   A.  Yes, Your Honor.

16   Q.  You have a right to a speedy trial.  You have a right to

17   a trial within approximately 70 days of your first

18   appearance.  Do you understand that?

19   A.  Yes, Your Honor.

20   Q.  That means that the United States Government could not

21   hold you indefinitely without you having a jury trial.  Do

22   you understand that?

23   A.  Yes, Your Honor.

24   Q.  And if we went to trial and the jury began its

25   deliberations, do you understand that when the jury begins

1   its deliberations, they will review all the evidence and

2   follow the law of the court and before they could find you

3   guilty of any count in the indictment, all 12 members of the

4   jury would have to agree beyond a reasonable doubt that you

5   were guilty of that count; do you understand that?

6   A.  Yes, Your Honor.

7   Q.  That means the verdict would have to be unanimous, all

8   12 jurors would have to agree.  Do you understand that?

9   A.  Yes, Your Honor.

10  Q.  If I accept your plea of guilty and sentence you, you

11  will not have a court trial nor would you have a jury trial

12  of 12 persons.  You would not have a trial of any kind.  Do

13  you understand that?

14  A.  Yes, Your Honor.

15  Q.  If I accept your plea of guilty and sentence you, you

16  understand that you will have a limited right of an appeal

17  to the higher court, which is the Eighth Circuit Court of

18  Appeals and that court sits in St. Louis, Missouri?  That

19  court reviews all of my sentences to see whether or not they

20  follow the law and the Constitution.  Do you understand

21  that?

22  A.  Yes, Your Honor.

23  Q.  And you will be able to appeal my sentence to that

24  court, but you would not be able to appeal whether or not

25  you were innocent.  Do you understand that?

1    A.  Yes, Your Honor.

2    Q.  Now, have there been any threats made to you by anyone

3    to get you to enter a plea of guilty here today?

4    A.  No, Your Honor.

5    Q.  Have there been any promises made to you to get you to

6    enter a plea of guilty other than what's in the Plea

7    Agreement and Sentencing Stipulations that you've signed?

8    A.  No, Your Honor.

9    Q.  And you understand that I'm not a party to the plea

10   agreement?

11   A.  I understand, Your Honor.

12   Q.  Now, are you under the care of a doctor, health care

13   practitioner, or nurse at this time?

14   A.  No, Your Honor.

15   Q.  Are you taking any prescribed medications at this time?

16   A.  No, Your Honor.

17   Q.  Have you had any drugs or alcohol within the last

18   48 hours?

19   A.  No, Your Honor.

20   Q.  And are you clearheaded here today?

21   A.  Yes, I am, Your Honor.

22   Q.  And you understand what's going on here today?

23   A.  Yes, I am, Your Honor.

24   Q.  Now, have you had enough time to consult with your

25   attorneys, Ms. Brandl and Ms. Atwal, regarding your case?

1    A.  Yes, Your Honor.

2    Q.  And have they gone over all the information that the

3    government has against you, any defenses that you may have

4    to any of the crimes that you may be charged with?

5    A.  Yes, they have, Your Honor.

6    Q.  And are you satisfied with their representation of you?

7    A.  Yes, I am, Your Honor.

8    Q.  Now, my job is to determine whether or not you

9    understand your constitutional rights.  Do you understand

10   that?

11   A.  Yes, Your Honor.

12   Q.  Do you have any questions about any of the rights that

13   I've gone over with you here today?

14   A.  No, Your Honor.

15   Q.  And do you also understand that before you can enter a

16   plea of guilty, I have to make sure that you understand

17   those rights and that you knowingly, voluntarily, and

18   intelligently give up those rights to enter a plea of

19   guilty; do you understand that?

20   A.  Yes, Your Honor.

21   Q.  Do you have any questions of me, your attorneys, the

22   government about any of the constitutional rights I've gone

23   over with you here today?

24   A.  No, Your Honor.

25   Q.  And do you knowingly, voluntarily, and intelligently

1    give up those rights to enter a plea of guilty?

2    A.  Yes, Your Honor.

3    Q.  All right.  To Count 1 of the information, which charges

4    you with conspiracy to provide material support and

5    resources to members of ISIL, the Islamic State of Iraq and

6    Levant, a designated foreign terrorist organization, all in

7    violation of Title 18, United States Code, Section 2339B,

8    how do you plead to that count of the information, guilty or

9    not guilty?

10   A.  Guilty, Your Honor.

11   Q.  Now, just because you've said you are guilty does not

12   mean, in fact, that you are guilty of the offense.  I will

13   have to hear from your own mouth a factual basis that will

14   comply with the law to make you guilty of the offense.  So

15   Mr. Winter will ask you a series of questions to see whether

16   or not you are, in fact, guilty of this count of the

17   information.

18            THE COURT:  Mr. Winter.

19            MR. WINTER:  Thank you, Your Honor.

20                          **EXAMINATION**

21   BY MR. WINTER:

22   Q.  Mr. Yusuf, I'm going to refer you back to the plea

23   agreement and we're really starting on page 2.  I'm going to

24   ask you a series of questions.

25            First of all, between approximately March 1st and

1      June 1st is it true that you became aware --

2                THE COURT:  What year?

3      BY MR. WINTER:

4      Q.  -- of 2014 is it true that you became aware of a group

5      of individuals, both in the United States and outside of the

6      United States, who had traveled or who desired to travel

7      overseas to join organizations that were fighting against

8      the Syrian president, Bashar al-Assad?

9      A.  Yes, sir.

10     Q.  Now, during that same time frame in 2014, March through

11     April, is it true you attended a number of meetings and were

12     involved in conversations that occurred in the district of

13     Minnesota in which this fighting against the Assad regime

14     was discussed openly?

15     A.  Yes, sir.

16     Q.  Is it true that on April 28, 2014, with the assistance

17     of one or more of the unindicted co-conspirators, that you

18     applied for an expedited passport?

19     A.  Yes, sir.

20     Q.  Is it true that the funds that you used to pay for this

21     passport were provided by one of your unindicted

22     co-conspirators?

23     A.  Yes, sir.

24     Q.  Is it true that during this process of applying for the

25     passport, you provided false information to the passport

1    officials about the nature of your travel and that this

2    information was provided to the specialist in response to

3    their questions on their forms; is that correct?

4    A.  Yes, sir.

5    Q.  And specifically you told the specialist that the

6    purpose of your travel to Turkey was vacation when, in fact,

7    you intended to leave Turkey and immediately go to Syria to

8    join ISIL?

9    A.  Yes, sir.

10   Q.  On May 24th of 2014 you used funds that were provided by

11   an unindicted co-conspirator to purchase a round-trip ticket

12   then to Turkey; is that true?

13   A.  Yes, sir.

14   Q.  Then several days later, on May 28th, one of your

15   co-conspirators -- initials are A.N., but the person is Abdi

16   Nur, correct?

17   A.  Yes, sir.

18   Q.  -- gave you a ride to the light rail or a light rail

19   train station in South Minneapolis; is that correct?

20   A.  Yes, sir.

21   Q.  And you took this ride there to then go to the airport

22   and by doing so you avoided detection by law enforcement at

23   the airport; is that correct?

24   A.  Yes, sir.

25   Q.  Is it true that you and Abdi Nur had planned to then

1      meet in Istanbul in the very near future and then jointly

2      travel together to Syria to join ISIL?

3      A.   Yes, sir.

4      Q.   Then on the day that you attempted to depart, which was

5      May 28th, you were prevented from doing so by federal

6      agents; is that correct?

7      A.   Yes, sir.

8      Q.   And at that time you were interviewed by the federal

9      agents regarding the nature of your travel, correct?

10     A.   Yes, sir.

11     Q.   And when you talked to them, you maintained that you

12     just simply intended to vacation in Turkey; is that right?

13     A.   Yes, sir.

14     Q.   And you agree that that was, in fact, a lie?

15     A.   Yes, sir.

16     Q.   You also didn't notify the agents at that time that Abdi

17     Nur -- that you knew Abdi Nur also intended to leave very

18     soon for Syria, correct?

19     A.   Yes, sir.

20     Q.   And, in fact, it's your understanding that Abdi Nur did

21     successfully depart the United States and is currently

22     fighting with ISIL?

23     A.   Yes, sir.

24          MR. WINTER:  Your Honor, the government is

25     satisfied with his factual basis for the offense.

1          THE COURT:  Ms. Brandl, any questions?

2          MS. BRANDL:  No questions, Your Honor, but we did

3     speak before the hearing to discuss that one of the factors

4     that needs to be laid out is that ISIL had been declared a

5     terrorist organization by the United States on May 16th,

6     which was 12 days before he attempted to depart.

7          THE COURT:  All right.  The Court will accept the

8     plea of guilty.  I will order a presentence investigation

9     report for this matter.

10          Sir, within seven days of today's date or a date

11     that's convenient for your attorneys and you, you will meet

12     with my probation officer.  You will have an interview.  At

13     that interview you are to be truthful and accurate with the

14     information that you provide the probation officer.

15          The probation officer will continue to investigate

16     you and complete the presentence investigation report.  Once

17     that report is completed, a copy of that report will be sent

18     to your attorneys and also to the government.

19          You will have an absolute right to read that

20     report with your attorneys and if there's anything that is

21     in that report that is in error, that you object to, or you

22     think something should be added, you make sure that your

23     attorneys know about that so they can transmit that

24     information to the probation officer.  The government will

25     have the same opportunity to do that.

1          Once all that is done and the probation officer

2    has all the information and reviews the information and

3    makes any corrections or additions to the report and

4    finalizes the report, once it's finalized, it will be sent

5    to me.  I will read that report and I will set down a date

6    for your sentencing.

7          At your sentencing if there's any motions to be

8    made on your behalf, I will rule on those motions in open

9    court.  Then we'll move to the sentencing phase of the

10   hearing.

11         The sentencing phase of the hearing means that

12   your counsel, your attorneys, will have an opportunity to

13   argue and advocate for a certain sentence for you.  You will

14   have an opportunity -- you will have an absolute right to

15   talk to me.  You will have an absolute right to tell me

16   anything that you want to tell me about yourself, about this

17   offense, or anything else that you think I should know

18   before I sentence you.

19         The government will have an opportunity to respond

20   to anything that you have said or anything that your

21   attorneys have said and even the government can recommend a

22   sentence to the Court.  Then I will sentence you.

23         Do you have any questions about the procedures

24   that we'll be using from now on?

25              THE DEFENDANT:  No, Your Honor.

 1              THE COURT:  And can you tell me what you've done

 2      here today.

 3              THE DEFENDANT:  I've pled guilty, Your Honor.

 4              THE COURT:  And what have you pled guilty to?

 5              THE DEFENDANT:  To one count of providing material

 6      support to a designated foreign terrorist organization, Your

 7      Honor.

 8              THE COURT:  And what organization is that?

 9              THE DEFENDANT:  ISIL, Your Honor.

10              THE COURT:  And do you understand what sentence

11      you're looking at?

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  Can you tell me what that is.

14              THE DEFENDANT:  Fifteen years, Your Honor.

15              THE COURT:  And are you, in fact, guilty of this

16      offense?

17              THE DEFENDANT:  Yes, Your Honor.

18              THE COURT:  You may submit the Plea Agreement and

19      Sentencing Stipulations and the waiver of the indictment.

20              Anything further for the government?

21              MR. WINTER:  No, Your Honor.  Thank you.

22              THE COURT:  For defense?

23              MS. BRANDL:  Just making sure that Mr. Yusuf can

24      continue out of custody at this time in the halfway house as

25      he has been.

 1                    THE COURT:  Yes.

 2                    MS. BRANDL:  Thank you, Your Honor.

 3                    THE COURT:  Did I receive a report?

 4                    THE CLERK:  The probation one is in there and then

 5          the one I gave you from the attorney.

 6                    THE COURT:  I didn't see one.

 7                    MR. WINTER:  (Indicating.)

 8                    MS. BRANDL:  Your Honor, if we may, we also

 9          submitted a report from Mary McKinley from Heartland

10          Democracy this morning as well.

11                    THE COURT:  Right, I've read that.

12             (Pause.)

13                    THE COURT:  All right.  The conditions that I set

14          originally will continue and any changes, plans that are

15          proposed will have to come through me for approval.

16                    All right.  You understand, sir, you are to

17          continue on with your conditions of your release?

18                    THE DEFENDANT:  Yes, Your Honor.

19                    THE COURT:  And you understand that any violations

20          of those conditions will immediately -- I will immediately

21          take you into custody and keep you in custody until your

22          sentencing?

23                    THE DEFENDANT:  Yes, Your Honor.

24                    THE COURT:  Do you have any questions about what

25          has occurred here today?

1              THE DEFENDANT:  No, Your Honor.

2              THE COURT:  And have you had sufficient time to

3      talk to your family about this?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  And do you feel that they understand

6      what's going on?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  All right.  We will recess.

9              MS. BRANDL:  Thank you, Your Honor.

10         (Court adjourned at 10:58 a.m.)

11                              *      *      *

12

13

14

15         I, Lori A. Simpson, certify that the foregoing is a

16     correct transcript from the record of proceedings in the

17     above-entitled matter.

18

19              Certified by:  *s/ Lori A. Simpson*

20                             Lori A. Simpson, RMR-CRR

21

22

23

24

25